# Chandler v. McCoy et al.

(Decided Dec. 8, 1936.)

HARPER & GOAD for appellant.

W. D. GILLIAM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellant, A. L. Chandler, sued the appellees, Etta McCoy and her husband, Will McCoy, to set aside a deed to Mrs. McCoy, or, in the alternative, to reform it to show the agreement or true consideration. The appeal is from a decree for the defendants.

Avoiding irrelevant testimony and collateral matters, which have little probative value on the one point, as to what was the agreement in relation to the consideration for the sale, the evidence is as follows: Mr. Chandler, an elderly man, had a mortgage on his farm to a bank in Scottsville and was being pressed for payment. He agreed to sell 39 acres of his farm to Will McCoy for $1,000, but, when the time came to make the deed, McCoy had the conveyance made to his wife. McCoy owned three notes aggregating $761.80 of Riley Day, which were secured by a second lien. He insisted on assigning these notes as the cash payment to Chandler, but he would not take them as such unless the bank would accept them as cash. Chandler states that, while the deed was being written by Perry Pitchford, McCoy told him that Mr. Hobdy, the president of the bank, had agreed to take the Day notes as cash, but if he should not (but he was sure he would), then they would rewrite the deed so as to retain a lien on the 39 acres as further securing the Day notes. The bank would not accept those notes as cash, but took them, and also four notes of $59.53 each, executed by Mrs. McCoy and secured by a lien retained on the land conveyed for the balance of the purchase price, as collateral to secure Chandler's debt to the bank. In consideration thereof, the bank released its mortgage on the 39 acres.

Mr. Chandler is corroborated by his daughter-in-law, who testifies that McCoy said before the deed was signed that Mr. Hobdy told him he would accept the Day notes as cash, but, if he wouldn't, then he (McCoy) would have Pitchford go to town and fix the notes so the bank would take them. Pitchford says that the parties were about three hours completing the writing of the deed, or rather in telling him what to write. During the time they were talking about the matter, Chandler and McCoy left to go to town to see Hobdy. As no cash was passed, at the instance of Chandler, he wrote the consideration as ''$761.80 in hand paid,'' instead of ''cash in hand paid.'' Nothing was left out of the deed, and it was read by or to Mr. Chandler, and he clearly understood its contents. Sometime later Pitchford went to Scottsville to do something about the deed, with which Mr. Chandler had not been satisfied, but there wasn't anything done. Mr. Hobdy explained the situation with reference to the mortgage of the bank, the acceptance of the Day notes and of Mrs. McCoy's notes as security for the Chandler mortgage in consideration of the bank releasing its mortgage on the 39 acres. One of the Mc-Coy notes had been paid. Later Chandler obtained a farm loan and paid off his debt to the bank, which was around $500. He testified that he had never told McCoy he would accept the Day notes as cash, and, when Mr. Chandler asked him to do so, he advised him that he could not. Whether this was before or after the execution of the deed does not appear. Mr. Chandler had been a merchant and postmaster, and had had several land trades and many transactions with bankers, so he was not altogether a novice. The land upon which the Day notes were a lien was afterwards sold at a foreclosure sale brought by the first mortgagee for his debt, so these notes proved worthless. It is made to appear, however, that the land was really worth a great deal more than the amount it brought, and Mr. Chandler stood by and let it go without protecting his interests.

McCoy denies having at any time told Chandler that the bank would take over the Day notes as cash. During the writing of the deed, Chandler said he would go to town and see if Hobdy would do so, and McCoy's son drove them both there. Chandler talked to Hobdy, but McCoy did not know what was said. They returned to Chandler's home and again went to see Hobdy before the deed was completed. During this second conversa-

tion, Hobdy asked to see the deed wherein the lien had been retained for the Day notes, and it was shown him. Two or three days after the deed had been made, Chandler turned all the notes over to the bank and its mortgage on the 39 acres was released. Chandler never expressed any dissatisfaction until 14 months later. This, Chandler testifies, was because McCoy was promising to straighten up the matter. McCoy's son corroborated him on material points. A number of witnesses were introduced to impeach McCoy by establishing his bad reputation. Some of them, however, were not very strong against him. On the other hand, McCoy introduced witnesses to sustain his reputation.

Thus we practically have the same quality and quantity of evidence on each side as to the representations made by McCoy to Chandler on the point of deceit in relation to the bank accepting the Day notes as cash and as to McCoy agreeing to have the deed rewritten to make it satisfactory to Chandler in case the bank did not take the notes. But the testimony of Pitchford is that the deed was written as Chandler directed it to be written, and of Hobdy that in two conversations while the deed was in course of preparation, he had given Chandler to understand that he would take the notes only as a pledge for the further security for his indebtedness to the bank. Then there is the delay of two years or more before legal action was taken to rescind or reform the deed.

It is a well-settled law that a deed will not be set aside or reformed for fraud or deceit except upon clear and convincing evidence. Moreover, in case of doubt, this court accepts the decision of the chancellor upon a disputed question of fact.

The judgment is therefore affirmed.